IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAZEN F. SAID, | : | CIVIL ACTION NO. **1:CV-07-1028** |
| Plaintiff | : | (Judge Rambo) |
| v. | : | (Magistrate Judge Blewitt) |
| JANINE DONATE, et al., | : | |
| Defendants | : | |

## **REPORT AND RECOMMENDATION**

**I. Background.**

Plaintiff, Mazen F. Said, an immigration detainee being held at the Lackawanna County Prison ("LCP") filed, *pro se*, the instant civil rights action pursuant to 42 U.S.C. § 1983, on June 5, 2007. (Doc. 1). Plaintiff has also filed a motion for leave to proceed *in forma pauperis*. (Doc. 2). Finally, Plaintiff has filed, prematurely, a motion for summary judgment and a one-page brief. (Docs. 4 and 5).[1]

Plaintiff's claim was set forth on a form § 1983 complaint which this court routinely provides to *pro se* litigants. *See* Doc. 1. Plaintiff does not indicate whether he has exhausted his Administrative remedies at Lackawanna County Prison. (Doc. 1, p. 1).[2] In fact, Plaintiff checks both

---

[1] Plaintiff recently filed another § 1983 action with this Court on May 24, 2007, claiming that the LCP law library was inadequate. *See* Civil No. 07-0947, M.D. Pa.

[2] In his Complaint, as stated above, Plaintiff fails to indicate that he has fully exhausted the grievance procedure available at Lackawanna County Prison. (Doc. 1, p. 1, ¶ 2.). Plaintiff states that he filed grievances, but did not receive any response. (*Id*., p. 1, ¶ 4.). There are documents attached to Plaintiff's Complaint of past grievances, but Plaintiff does not claim to have fully exhausted his administrative remedies. Thus, Plaintiff seems not to have exhausted all of his present claims.

Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit. *Spruill*

the "yes" and "no" boxes on the form Complaint with respect to the question of whether he has filed grievances. (*Id.*, ¶ 2.). As exhibits to his Complaint, Exs. 1-4, Plaintiff has attached copies of three (3) LCP Inmate Request forms dated March through April 2007, two (2) LCP Grievance forms dated in May 2007, and a Medical Diet Order Form from York County Prison dated March 16, 2006.

## II.  Allegations of Complaint.

Plaintiff is deemed as alleging that his First Amendment right to free exercise of religion and Eighth Amendment right to proper medical care were violated at Lackawanna County Prison. (Doc. 1, Ex. 1). Plaintiff avers that Defendants, all employees of LCP, namely, Warden Janine Donate, Assistant Warden Timothy Betti, Cpt. Chiarelli, and Medical Supervisor Barbara Fox, should be held liable because they "all were aware of [the] Halel meat meal required by [the] Muslim religion (Kosher)," which Plaintiff did not receive despite multiple requests and two grievances. (*Id.*, p. 1). Plaintiff also complains that he has been denied this meal despite a Medical Diet Order Form dated March 16, 2006, calling for a therapeutic diet while he was confined at York County Prison. (Doc. 1, Ex. 4). Plaintiff seeks, as relief, compensation in the amount of one hundred thousand dollars, "for medical meal denial," punitive damages in the amount of two hundred thousand dollars, "for

---

*v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006). In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* However, Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

religious denial," and courts fees. (Doc. 1, p. 2).

Thus, we deem Plaintiff as alleging that Defendants denied him his Kosher, therapeutic meal menu that was required for his heartburn medical condition as well as his Muslim religion.

**III. PLRA.**

The Prison Litigation Reform Act of 1995,[3] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[4]  Specifically, § 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

We have reviewed the allegations of the Complaint and have determined that the Complaint is subject to dismissal as to all four (4) Defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim.  Specifically, Plaintiff does not state an Eighth Amendment claim against Defendants because he does not have a severe medical condition and he does not allege that Defendants were deliberately indifferent to any serious medical condition. *West v. Keve*, 571 F.2d

---

[3] Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[4] The Plaintiff completed an application to proceed *in forma pauperis* and authorization to have funds deducted from his prison account.  The court then issued an administrative order directing the warden to commence the withdrawal of the full filing fee due the court from the Plaintiff's prison trust fund account.

158, 161 (3d Cir. 1978). Furthermore, no First Amendment claim is stated against Defendants because they are not alleged to have placed a substantial burden on the exercise of Plaintiff's religious beliefs. *Small v. Lehman*, 98 F. 3d 762, 767 (3d Cir. 1996). Moreover, it is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *Parratt v. Taylor*, 451 U.S. 527 (1981)**.** Finally, to the extent that Plaintiff is deemed as claiming that Defendants are liable for failing to respond to his multiple grievances, no constitutional claim is stated since he did not have a right to a grievance procedure.

## IV. Section 1983 Standard.

In an action brought pursuant to 42 U.S.C. § 1983, the Plaintiff must prove the following two essential elements in order to state a claim: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).[5]

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Drummer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *Parratt, supra*. It is also well settled in the Third Circuit

---

[5] The four individual Defendants, as employees of LCP, are clearly state actors.

that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id*. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id*. As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id*. Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985) (per curiam) (a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of section 1983).

**V. Motion to Dismiss Standard.**

When evaluating a pleading for failure to state a claim, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988). A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed

without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976). A complaint filed by a *pro se* party should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (citation omitted).

## VI.    Summary Judgment Standard.

As stated above, Plaintiff has filed a summary judgment motion, despite the fact that his Complaint has not yet been screened under the PLRA, and it has not even been served on any defendant. (Doc. 4). A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## VII.    Discussion.

The Court is obligated by the PLRA to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. In this case, Plaintiff avers that he has been denied his First Amendment right to free exercise of religion and his Eighth Amendment right to adequate medical care since he has not been provided his therapeutic Kosher meal menu. Plaintiff alleges that the Defendants were aware of his condition and did not remedy the situation despite his numerous requests and grievances. (Doc. 1, p. 1, ¶ 4.). For these reasons, Plaintiff avers

that he should receive a total of three hundred thousand dollars in compensatory and punitive damages, plus court fees. (*Id.*, ¶ 5.).

### *A. Eighth Amendment Claim*

Plaintiff alleges that because of his heartburn, he requires a therapeutic diet. Plaintiff has attached to his § 1983 Complaint a photocopy of a Medical Diet Order Form, dated March 16, 2006, from York County Prison. (Doc. 1, Ex. 4). The form indicates that Plaintiff was given a "New Diet Order" for a therapeutic diet to last "LOS," the length of his sentence.[6] (*Id.*). Plaintiff alleges that he cannot eat the meat that is being served to him at Lackawanna County Prison because of his medical condition, *i.e.* heartburn, and that he requested Kosher food. Plaintiff is construed as claiming that the denial of his therapeutic diet is a violation of the Eighth Amendment.

The Third Circuit has recognized that a state is under a duty to provide adequate medical care to those it is punishing by incarceration, and, while the constitutional standard for adequate medical treatment has not been fully developed, the deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment proscription against cruel and unusual punishment. *West v. Keve,* 571 F.2d 158, 161 (3d Cir. 1978) *citing Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *See also Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *Monmouth County Corr. Inst. Inmates v. Lonzaro*, 834 F.2d 326, 346 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988). An inadequate medical care claim, as we have here, requires allegations that the

---

[6]Plaintiff's May 31, 2007 LCP Grievance form (Doc. 1, Ex. 3), which he labeled a "medical slip," indicates that he is an "INS federal inmate" held at LCP.

prison official acted with "deliberate indifference to serious medical needs" of the plaintiff, while a prisoner. *Estelle*, 429 U.S. at 104 (1976); *Unterberg v. Correctional Medical Systems, Inc.*, 799 F. Supp. 490, 494-95 (E.D. Pa. 1992). The official must know of and disregard an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. "The question...is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Farmer*, 511 U.S. at 843.

In order to state a viable Eighth Amendment claim, a prisoner must demonstrate that the Defendant was deliberately indifferent to his medical needs and that those needs were serious. *Estelle*, 429 U.S. at 106. Mere disagreement as to the proper medical treatment does not support a claim of an Eighth Amendment violation. *See Monmouth*, *supra*; *see also Durmer v. O'Carroll*, 991 F. 2d 64, 67 (3d Cir. 1993) ('[T]he law is clear that simple medical malpractice is insufficient to present a constitutional violation."). As such, "[a] distinction must be made between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment." *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988) *citing United States ex. rel. Walker v. Fayette County*, 549 F.2d 573, 575 n.2 (3d Cir. 1979).

Plaintiff does not allege that any of the Defendants were deliberately indifferent to his medical condition. Plaintiff states that Defendants were aware of the "Halel meat meal" required by the Muslim religion (Doc. 1, p. 1, ¶ 4.), but does not aver that any Defendant was

8

aware of his medical condition or that any Defendant was personally involved in providing him with improper medical care. Even if Defendants were aware of Plaintiff's medical condition, heartburn is not a serious medical condition. As the Third Circuit stated in *Monmouth, supra* at 347:

> A medical need is "serious," in satisfaction of the second prong of the *Estelle* test, if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Pace v. Fauver,* 479 F.Supp. 456, 458 (D.N.J.1979), *aff'd,* 649 F.2d 860 (3d Cir.1981); *accord Laaman v. Helgemoe,* 437 F.Supp. 269, 311 (D.N.H.1977). The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment. For instance, *Estelle* makes clear that if "unnecessary and wanton infliction of pain," 429 U.S. at 103, 97 S.Ct. at 290, results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the [E]ighth [A]mendment. *See id.* at 105, 97 S.Ct. at 291. In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious. *See, e.g., Archer,* 733 F.2d at 16 (pregnant inmate who miscarried stated cognizable claim where she alleged that defendants intentionally delayed emergency medical aid in order to make her suffer); *Ramos v. Lamm,* 639 F.2d 559, 576 (10th Cir.1980) (delay in providing oral surgery resulted in "continued and unnecessary pain and loss of teeth"), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Laaman,* 437 F.Supp. at 312 (denial of treatment may result in permanent damage or require corrective surgery); *Derrickson,* 390 F.Supp. at 907 (failure to perform elective surgery on inmate serving life sentence would result in permanent denial of medical treatment and would render inmate's condition irreparable).

Heartburn, while a treatable condition, clearly does not meet the above standard for a serious medical condition. Moreover, Plaintiff was not forced to eat the meat that supposedly caused his heartburn. In fact, Plaintiff seems to indicate that his heartburn could be treated with medicines or a change in diet. Indeed, Plaintiff's Ex. 3, May 31, 2007 "medical slip" Grievance

requested "heartburn medication," and that he was waiting for his "prescribed Kosher meals." This Grievance was not addressed to any Defendant in this case. As stated above, Plaintiff does not allege that any Defendant was involved with his medical treatment, and thus his allegations do not support a claim of an Eighth Amendment violation. *See Monmouth, supra*; *see also Durmer supra*. For the above reasons, we do not find that Plaintiff has stated an Eighth Amendment denial of medical care claim against any Defendant with respect to being denied his Kosher meals.

Additionally, Plaintiff does not sufficiently state the personal involvement of any of our Defendants with respect to his Eighth Amendment claim. Rather, Plaintiff states that all four (4) Defendants were aware of the "Halel meat meal required by Muslim religion." (Doc. 1, p. 1). Nor was the Medical Diet Order Form to which Plaintiff refers even issued by LCP. As stated, it was issued by York County Prison. (Doc. 1, Ex. 4). Further, Plaintiff does not allege that any Defendants denied him any heartburn medication or that any Defendant was personally involved with his medical care.

### *B. First Amendment Claim*

Plaintiff alleges that Defendants were aware of the "Halel meat meal" required by the Muslim religion but did not make sure he received the meal. (Doc. 1, p. 1, ¶ 4.). We construe the Plaintiff as claiming that Defendants interfered with his First Amendment right of free exercise of religion. Inmates must be given "reasonable opportunities" to exercise their religious freedom protected by the First Amendment. *See Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972). Plaintiff alleges that Defendants should have provided him his religious diet after his multiple

requests and grievances. None of the Inmate Requests or Grievances attached to Plaintiff's Complaint are addressed to any of our Defendants, and they were not received by our Defendants. Some of the requests are addressed to "Rev. Jackson." (Doc. 1, Exs. 1-4). We find that the alleged conduct does not fall within the scope of the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb, *et seq.*, which applies to free exercise of religion claims under the First Amendment raised by prisoners. *See Small v. Lehman*, 98 F. 3d 762, 768 (3d Cir. 1996).

In *Small*, the Court held that the challenged restraint of freedom of religion does not fall within the scope of the RFRA unless the prisoner can establish that a "substantial burden" is placed on his ability to exercise his religious freedom. *Id*. at 767. The interference must be more than an inconvenience. *Id*. Moreover, in *Branch v. Russian*, 2005 WL 1137879, * 7 (M.D. Pa.), this Court stated:

> Individuals have a constitutionally protected right to follow the religious teachings and practices of their choice. *Employment Div. v. Smith*, 494 U.S. 872, 881-83, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). This right may be limited by law of general applicability, restricting both religious and non-religious conduct, but reasonable accommodations for religious observance may be required in certain circumstances. *Id.; see also Wisconsin v. Yoder*, 406 U.S. 205, 214-15, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Particularly in the prison context, where inmates are precluded from engaging in a variety of otherwise permissible activities, officials may be required to provide exemptions from restrictions that place a "substantial burden" on an inmate's adherence to "sincerely held religious beliefs," unless the officials offer compelling reasons for refusing such accommodation. *See* 42 U.S.C. § 2000cc-1(a); *see also Smith*, 494 U.S. at 884; *Turner*, 482 U.S. at 89-91.

In *Branch*, the Plaintiff inmate claimed that DC-ADM 807, Hygiene and Grooming Policy, violated his right to free exercise of religion. This Court found that Plaintiff Branch failed to establish the threshold element of such a claim, since he did not explain how long hair

affected his religious beliefs and only alleged that he took a vow requiring him to keep long hair. Thus, Plaintiff Branch did not establish a burden on the exercise of his religion.

Our Plaintiff does not allege that he was not permitted to comply with his religious diet or that he was not provided other food within his diet to eat.  Rather, he only claims that he was not eating the meat provided with his meals, and that Defendants did not respond to his grievances and did not arrange for him to receive "Halel meat meal" with his meals.  The Plaintiff has not alleged that Defendants' conduct inhibited or curtailed in any way his ability to express adherence to his Muslim religion and its beliefs.  Nor does the Plaintiff claim that Defendants denied him a reasonable opportunity to follow any activities fundamental to his religion.   The Plaintiff's exhibits show that he simply avoided eating the food, *i.e.* the meat, which did not comport to his religious diet.[7]  The Plaintiff does not even claim that any Defendant served him his meals at LCP or that any Defendant caused other prison staff to interfere with his religious diet.  The Plaintiff does not claim that it was LCP policy to serve him food which did not conform to his religious dietary restrictions.  Thus, the Plaintiff has failed to meet the substantial burden test with respect to his religious claim against our Defendants, and the claims against all Defendants should be dismissed.

Additionally, we find Defendants cannot be held liable with respect to their alleged failure to respond to Plaintiff's grievances, since in this case Plaintiff had no Constitutional right

---

[7]While Plaintiff complains about "Halel meat meal," he refers to the meal as "Kosher" throughout his Complaint and in the accompanying attachments.  Plaintiff's Inmate Request dated April 3, 2007, actually stated that, "Most of my family is Jews..." (Doc. 1, Ex. 1).  It is not clear from his Complaint and the attached documents whether Plaintiff is trying to adhere to a traditional Muslim or Jewish diet.

to a grievance process. *See Weakley v. Fischi*, Civil No. 06-1823, M.D. Pa., 4-30-07 Memorandum, pp. 5-6 (citing *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997)). The law is well-settled that there is no constitutional right to a grievance procedure. *See Jones v. North Carolina Prisoners' Labor Union, Inc.* 433 U.S. 119, 137-138 (1977). This very Court has also recognized that grievance procedures are not constitutionally mandated. *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential). Even if the prison provides for a grievance procedure, as LCP does, violations of those procedures do not amount to a civil rights cause of action. *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd 74 F. 3d 1226 (3d Cir. 1995). *See also Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa. (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). Thus, even if the prison officials allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra*.

### C. Respondeat Superior Liability

Moreover, as stated, it is well established that personal liability under Section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. Plaintiff specifies no actual hindrances or directions of any of our Defendants to deny him his desired meals or to deny him heartburn medication. Plaintiff

alleges all Defendants are liable simply because of their roles in the prison, and, as discussed above, allegations based on a Defendant's position are not enough to establish personal liability in a § 1983 civil rights suit.

### D. Relief

As relief, we have stated that Plaintiff requests $100,000 in compensatory damages and $200,000 in punitive damages against Defendants.  Since Plaintiff seeks unliquidated damages, he cannot claim a specific sum of relief.  Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's request for specific monetary damages totaling $300,000 should be stricken from his Complaint.  *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure.

### E. *Plaintiff's Summary Judgment Motion*

At this stage of the case, the Defendants have not been served and have not had the opportunity to respond to Plaintiff's original Complaint.  Plaintiff's dispositive motion (Doc. 4) is completely premature and should be denied.  If the District Court permits this case to proceed, then Plaintiff will have the opportunity to re-file a Summary Judgment Motion after Defendants have responded to his pleading and after discovery is completed.

It is not even clear, at this juncture of the case, if Plaintiff's pleading has stated a constitutional claim against any Defendant upon which he can proceed.  After a determination is made as to if Plaintiff's pleading has stated a claim and if he will be allowed to proceed, Defendants will then have an opportunity to respond to Plaintiff's pleading.  Discovery will then

be allowed.[8]

At this time, Defendants have not yet been served, and they have not even been given an opportunity to assert any defense they may have to Plaintiff's pleading. Thus, it is entirely premature for Plaintiff to move for summary judgment at this stage of the case. Based on this, we shall recommend that Plaintiff's Summary Judgment Motion (Doc. 4) be denied without prejudice to re-file it at the appropriate time.

## VIII. Recommendation.

Based on the foregoing, we respectfully recommend that Plaintiff's First Amendment and Eighth Amendment claims against all Defendants be dismissed.[9] We also recommend that Plaintiff's Motion for Summary Judgment (Doc. 4) be denied. Further, we recommend that

---

[8] If the Court determines that Plaintiff will be permitted to proceed with his pleading, the Complaint will be served on Defendants, and we will issue a scheduling order setting a discovery deadline and a dispositive motion deadline.

[9] Notwithstanding Said's *pro se* status, we do not recommend that he be permitted leave to amend his Complaint regarding his constitutional claims, since we find that, based on well-settled case law, he fails to state any such claims. Thus, we find futility of any amendment of these claims, and we shall not recommend Plaintiff be granted leave to amend his action. *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 236 (3d Cir. 2004).

Plaintiff's Motion to Proceed *in forma pauperis* be granted (Doc. 2) solely for the purpose of filing this action.

                                        **s/ Thomas M. Blewitt**
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: June 29 , 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAZEN F. SAID, | : | CIVIL ACTION NO. **1:CV-07-1028** |
| Plaintiff | : | (Judge Rambo) |
| v. | : | (Magistrate Judge Blewitt) |
| JANINE DONATE, et al., | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **June 29 , 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however,

need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                      **s/ Thomas M. Blewitt**
                                                      **THOMAS M. BLEWITT**
                                                      **United States Magistrate Judge**

**Dated: June 29, 2007**